UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

In re: BOARD OF DIRECTORS OF
TELECOM ARGENTINA S.A. AS
FOREIGN REPRESENTATIVE OF
TELECOM ARGENTINA S.A.,

Debtor in Foreign Proceeding.

------------------------------------------------------X

**OPINION AND ORDER**

05 Civ. 8803 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

On October 17, 2005, The Argo Fund, Ltd. ("Argo"), a creditor of Telecom Argentina, S.A. ("Telecom"), filed a motion to withdraw the reference of the above captioned petition from the United States Bankruptcy Court for the Southern District of New York to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(d). For the following reasons, Argo's motion is denied.

## I. BACKGROUND

Telecom is a *sociedad anonima* organized under Argentine law which provides telecommunications services in Argentina.[1] Telecom claims that due to Argentina's economic recession and currency devaluation in 2001, it faced a

---

[1] *See* Telecom Argentina's Verified Petition for Relief under 11 U.S.C. § 304 ("Telecom Pet.") ¶ 3.

1

severe liquidity crisis and inability to service its debt.² Under Argentine law, an insolvent company can restructure its debt through a privately negotiated *Acuerdo Preventivo Extrajudicial* ("APE").³ The APE must be approved by a supermajority in amount and majority in number of the holders of debt, and then confirmed by an Argentine court.⁴ Once confirmed, all of the company's unsecured creditors are bound by the APE.⁵

Telecom negotiated an APE with its creditors and secured an Argentine court's approval.⁶ The beneficial holders of Telecom's outstanding unsecured financial debt voted in favor of the APE by a supermajority of 94.4% in principal face amount and 82.4% in number.⁷ However, U.S. Bank N.A., the indenture trustee for certain notes issued by Telecom, refused to cancel notes held

---

² *See id.* ¶¶ 7-9.

³ *See Argentinian Recovery Co. LLC v. Board of Dirs. of Multicanal S.A.*, 331 B.R. 537, 540 (S.D.N.Y. 2005).

⁴ *See id.*

⁵ *See id.*

⁶ *See* Telecom Pet. at 1-2.

⁷ *See* Petitioner's Memorandum of Law in Opposition to Motion to Withdraw the Reference ("Pet. Mem.") at 2.

2

by creditors who did not affirmatively consent to the cancellation.[8] Consequently, on September 12, 2005, Telecom's foreign representative, the Board of Directors of Telecom Argentina, S.A. ("Board"), filed a petition for relief under section 304 of the Bankruptcy Code[9] in the bankruptcy court seeking a judgment giving full force and effect to the APE in the United States.

Argo claims to be the beneficial holder of interests in notes ("Notes") issued by Telecom in the United States under an indenture qualified under the Trust Indenture Act ("TIA").[10] Argo claims the APE would impair its rights under the Notes, in violation of the TIA. The TIA provides that "the right of any holder of any indenture security to receive payment of the principal and interest on such indenture security . . . shall not be impaired or affected without the consent of such holder."[11] Under the APE, Argo would receive either approximately eighty percent of the principal owed under the Notes, or new notes which extend the

---

[8]  *See* Telecom Pet. at 2.

[9]  *See* 11 U.S.C. § 304.

[10] *See* Respondent The Argo Fund, Ltd.'s Memorandum of Law in Support of Its Motion to Withdraw the Reference from the Bankruptcy Court Pursuant to 28 U.S.C. § 157(d) ("Argo Mem.") at 4.

[11] 15 U.S.C. § 77ppp(b).

dates on which principal was due, without compensation for outstanding interest.[12] Argo did not agree to the APE or participate in the Argentine proceedings.[13] Argo also contends that Telecom had sufficient assets to cover its outstanding obligations and therefore the APE is "the equivalent of a bad faith bankruptcy filing."[14] Argo now moves to withdraw the reference of the case from the bankruptcy court to the district court pursuant to section 157(d) of Title 28 of the United States Code.

## II. LEGAL STANDARD

### A. Mandatory Withdrawal

Section 157(d) mandates that the district court withdraw a proceeding referred to the bankruptcy court if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The Second Circuit construes this provision "narrowly," requiring withdrawal of the reference only if "substantial and material consideration of non-Bankruptcy Code federal [law] is

---

[12] *See* Argo Mem. at 4.

[13] *See* Pet. Mem. at 3.

[14] Argo Mem. at 7.

4

necessary for the resolution of the proceeding."[15] Withdrawal of the reference is appropriate where the case would require "the bankruptcy court to engage itself in the intricacies" of non-Bankruptcy law, as opposed to "routine application" of that law.[16] The "bare contention" that non-bankruptcy law is dispositive or in conflict with the bankruptcy code is not sufficient.[17]

## B. Discretionary Withdrawal

Section 157(d) gives the district court discretion to withdraw the reference of a case referred to the bankruptcy court "in whole or in part . . . on timely motion of any party, for cause shown." Although the statute does not define "cause," the Second Circuit has held that "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core

---

[15] *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (citations omitted).

[16] *Id. Accord City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

[17] *California v. Enron Corp. (In re Enron Corp.)*, No. 05 Civ. 4079, 2005 WL 1185804, at *2 (S.D.N.Y. May 17, 2005) ("bare contention" that claim involved Federal Power Act and Natural Gas Act preemption issues and conflicting Federal Energy Regulatory Commission opinions regarding tariffs unavailing for purposes of withdrawal).

or non-core."[18] Section 157(b)(2) sets forth a nonexhaustive list of core proceedings. Congress intended that core jurisdiction be construed broadly to avoid overwhelming the district court with bankruptcy matters.[19] "[C]ore matters are ones with which the bankruptcy court has greater familiarity and expertise."[20] After the court determines whether a matter is core, the inquiry turns to "whether the claim or proceeding . . . is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."[21]

## II. DISCUSSION

### A. Mandatory Withdrawal

Argo argues that withdrawal of the reference is mandatory because this case requires the bankruptcy court to determine Argo's rights under the TIA. But the TIA is not dispositive here. A recent section 304 proceeding involving an Argentine APE, *In re Board of Directors of Multicanal S.A.*, addressed this very

---

[18] *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion)*, 4 F.3d 1095, 1101 (2d Cir. 1993).

[19] *See Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*, No. 04 Civ. 509, 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004) (quotation marks omitted).

[20] *Id.* (citations omitted).

[21] *In re Orion*, 4 F.3d at 1101.

6

issue: whether the TIA bars the restructuring of a company's debt purusant to an APE over the objections of a minority noteholder.[22] In a well-reasoned decision, Bankruptcy Judge Allan L. Gropper held that "there is no real conflict" between the TIA and section 304.[23] A noteholder's rights under the TIA are not inviolate—rights under a TIA-qualified indenture can be impaired in a U.S. bankruptcy case.[24] If a foreign insolvency proceeding is entitled to comity under section 304, there is no principled basis for concluding that a noteholder's rights under the TIA should trump that proceeding.[25] Foreign debtors need not grant recalcitrant minority noteholders absolute rights under the TIA that those noteholders would not have in a bankruptcy case in the United States.[26] A person

---

[22] *See In re Board of Dirs. of Multicanal S.A.*, 307 B.R. 384, 391-94 (Bankr. S.D.N.Y. 2004), *aff'd*, Nos. 04 Civ. 3619, 05 Civ. 1968, 05 Civ. 1969 (S.D.N.Y. Apr. 5, 2005) (analyzing the text, legislative history, and public policy of the TIA).

[23] *Id.* at 391. Argo concedes that the district court's affirmance in *Multicanal* "resolves a non-controversial issue regarding the TIA and Section 304." *See* Respondent The Argo Fund, Ltd.'s Reply Memorandum in Further Support of Its Motion to Withdraw the Reference from the Bankruptcy Court Pursuant to 28 U.S.C. § 157(d) ("Argo Reply") at 2.

[24] *See id.* at 388, 393.

[25] *See id.*

[26] *See Escoban Fin. Ltd. v. Grupo Acerero del Norte, S.A. de C.V.*, 108 F. Supp. 2d 349, 354 (S.D.N.Y. 2000), *aff'd*, 2 Fed. Appx. 80 (2d Cir. 2001) ("The public policy and procedural fairness exceptions to the exercises of comity . . . are

7

who contracts with a foreign entity is subjected to the laws of the foreign government that affect "the powers and obligations of the corporation with which he voluntary contracts."[27] This includes bankruptcy laws.[28] In light of *Multicanal*, the bankruptcy court need not engage in substantial interpretation of the TIA.[29]

Argo attempts to distinguish *Multicanal* on the grounds that the company in that case was genuinely insolvent.[30] Argo claims that the "critical issue" here is "whether the protections of Section 316(b) of the TIA can be unfairly cast aside in the context of a viable company in a *foreign* proceeding,

---

not swords to be wielded by American creditors to frustrate and evade foreign bankruptcy laws.").

[27] *Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 537 (1883). *Accord Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) (citing *Gebhard* in support of stay of arbitration proceedings in favor of foreign bankruptcy case).

[28] *See Canada S. Ry. Co.*, 109 U.S. at 539.

[29] Argo points to *In re Cablevision, S.A.*, where the district court granted a motion to withdraw the reference in a section 304 proceeding where, as here, the creditor claimed than an APE violated the TIA. *See In re Cablevision, S.A.*, 315 B.R. 818, 821 (S.D.N.Y. 2004). But in *Cablevision*, the case for mandatory withdrawal was bolstered by the fact that "no Article III court has ever resolved the apparent tension between [s]ection 304 and the TIA." 315 B.R. at 821 at n.4. Now that the district court has affirmed Judge Gropper's holding in *Multicanal*, the issue is no longer one of first impression which must be decided by an Article III court.

[30] *See* Argo Reply at 5.

8

when those same protections would never be treated in such a manner in a *United States* proceeding."[31] This begs the question. The critical issue here is a matter of bankruptcy law: whether the APE should be afforded recognition under section 304. Section 304(c) directs the bankruptcy court's inquiry to factors including the just treatment of creditors, protection of U.S. creditors against prejudice and inconvenience, and prevention of preferential or fraudulent dispositions of property of the estate.[32] Under section 304, the rules of the foreign jurisdiction "need not be identical to those of the United States," but they must be "substantially in accordance" with United States bankruptcy law.[33] Consideration of the Telecom petition based on the factors set forth in section 304 does not require the bankruptcy court to explore the intricacies of the TIA.[34] If the TIA is relevant at all, its application is a routine matter.

## B. Discretionary Withdrawal

---

[31] *Id.* at 6 (emphasis in original).

[32] *See* 11 U.S.C. § 304(c)(1)-(3).

[33] *Bank of N.Y. & JCPL Leasing Corp. v. Treco (In re Treco)*, 240 F.3d 148, 158 (2d Cir. 2001) (citing 11 U.S.C. § 304(c)(4)).

[34] *See, e.g., In re Board of Dirs. of Multicanal S.A.*, 314 B.R. 486 (Bankr. S.D.N.Y. 2004) (analyzing Multicanal S.A.'s APE under section 304 and holding that discrimination against United States creditors required remedy for the APE to receive recognition).

9

This Court declines to exercise its discretion to withdraw the reference under section 157(d). Argo does not argue that a petition under section 304 is a non-core proceeding.[35] Argo argues only that the APE is not consistent with the purposes of section 304.[36] But, as previously discussed, whether the APE is entitled to recognition under section 304 is a matter the bankruptcy court is best suited to determine. Inquiries such as whether the APE procedures are "substantially in accordance" with United States bankruptcy law fall squarely within the expertise of the bankruptcy court.[37] Due to the bankruptcy court's unique familiarity with section 304 petitions, the *Orion* factors weigh against

---

[35] *See* Argo Reply at 7. Indeed, section 157(b)(2)'s nonexhaustive list of core matters was recently amended to include section 304 proceedings *See* 28 U.S.C. § 157(b)(2)(P) (applicable to cases filed after October 17, 2005). Although the amendment is not applicable here because the petition was filed prior to October 17, 2005, it is consistent with prior case law. *See In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks*, No. 02 Civ. 8131, 2002 WL 31898125, at *1 (S.D.N.Y. Dec. 30, 2002) (section 304 petition is core because it "can seemingly only arise in the context of a bankruptcy case") (citations omitted).

[36] *See* Argo Reply at 7. Generally, "the bankruptcy judge will determine, in the first instance, whether a matter is core or non-core" under section 157(b)(3). *United Illuminating Co. v. Enron Power Mktg., Inc. (In re Enron Corp.)*, No. 03 Civ. 5078, 2003 WL 22171695, at *2 (S.D.N.Y. Sep. 22, 2003). An initial ruling from the bankruptcy court is unnecessary here because Argo has effectively conceded the point and the other *Orion* factors weigh heavily against withdrawing the reference.

[37] 11 U.S.C. § 304(c)(4).

10

withdrawing the reference.[38] Resolution by the bankruptcy court best serves judicial efficiency, expedience, and uniformity in the administration of the bankruptcy laws.[39]

## V. CONCLUSION

For the foregoing reasons, Argo's motion is denied. The Clerk of the Court is directed to close the motion [Docket No. 1] and the case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
November 18, 2005

---

[38] See In re Orion, 4 F.3d at 1101.

[39] See In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks, 2002 WL 31898125, at *1.

The Board also argues that Argo lacks standing because Argo has offered no evidence of its actual interest in this case, has not been served, and has not moved to intervene in the bankruptcy court. See Pet. Mem. at 10. I do not reach the standing issue because I conclude that withdrawal of the reference is inappropriate on other grounds. Whether Argo has standing to contest Telecom's section 304 petition is a matter best resolved by the bankruptcy court.

11

## - Appearances -

### For Board of Directors of Telecom Argentina S.A.:

Karen E. Wagner, Esq.
Charles R. Nightingale, Esq.
Jordan Leigh Santeramo, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

### For The Argo Fund, Ltd.:

Michael M. Fay, Esq.
David S. Rosner, Esq.
Kim Conroy, Esq.
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1700